Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | David H. Coar | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 7063 | **DATE** | 7/7/2004 |
| **CASE TITLE** | First Union Rail Corporation vs. Heller Performance Polymers, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Defendant's Motion to Dismiss, or in the Alternative Transfer Venue to the United States District Court, Eastern District of California [Doc. No. 3]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] For the reasons set forth in the attached memorandum opinion and order, Defendant's motion to dismiss, or in the alternative, transfer venue to the United States District Court, Eastern District of California [Doc. No. 3] is DENIED.

/s/ David H. Coar

(11) ■ [For further detail see order attached to the original minute order.]

| X | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | JUL 0 9 2004 | |
| | Notified counsel by telephone. | | date docketed | 15 |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | | |
| | Copy to judge/magistrate judge. | 2004 JUL -8 PM 6:59 | date mailed notice | |
| slf(lc) | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FIRST UNION RAIL CORPORATION, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 03 C 7063 |
| v. ) | |
| ) | HONORABLE DAVID H. COAR |
| HELLER PERFORMANCE POLYMERS, ) | |
| INC. | |
| ) | |
| Defendant. ) | |

**DOCKETED**
**JUL 0 9 2004**

MEMORANDUM OPINION AND ORDER

Before this court is Heller Performance Polymers Inc.'s motion to dismiss, or alternatively, transfer venue to the United States District Court for the Eastern District of California. For the reasons set forth below, Defendant's motion is denied.

**FACTUAL BACKGROUND**

Plaintiff First Union Rail Corporation ("Plaintiff" or "First Union") is a North Carolina corporation, with its principal place of business in Rosemont, Illinois. (Pl. Compl. ¶1). Defendant Heller Performance Polymers, Inc. ("Defendant" or "HPP") is a Delaware corporation with its principal place of business in Visalia, California. (Def. Memo. in Supp. of Mot. to Dismiss, or Alternatively, Transfer Venue, p.1).[1] First Union and HPP entered into a written

---

[1] In its Complaint, First Union alleges that HPP's principal place of business is located in White Plains, New York. (Pl. Comp.¶ 2). However, HPP has presented sufficient evidence to the Court that shows its actual place of business is Visalia, California. (See Def. Memo. in Supp. of Mot. to Dismiss, or Alternatively Transfer Venue).

-1-

lease agreement dated June 11, 1998, in addition to various Riders (collectively, the "Lease"), under which HPP agreed to lease from First Union sixteen covered hopper railroad cars. (Pl. Compl. ¶ 5). The Lease obligated HPP, upon expiration of the specified terms of the Lease agreement, to return the Railroad Cars to the designated location empty and free from residue, clean, and in the same good condition as when each railroad car was delivered to HPP by First Union, ordinary wear and tear excepted. (Pl. Compl. ¶ 7). Additionally, the Lease provided that in the event that any railroad car was not delivered to First Union in accordance with the Lease within thirty days after the end of the term for such car, the monthly rental for such would be set at one and one-half times the monthly rental rate. Id.

On March 1, 2002, the Plaintiff alleges that the Defendant agreed in writing to a one-year renewal period of the Lease ("Lease Renewal") expiring on March 31, 2003. (Pl. Compl. ¶ 8). The terms of the Lease Renewal obligated HPP to pay First Union a rental of $325.00 per car per month. (Pl. Comp. ¶ 9). Upon expiration, the Lease Renewal provided the Defendant an option to either continue the lease on a month to month basis or return the railroad cars to a point designated by First Union. Id. Plaintiff alleges that HPP continued to use the cars in its business operations during the one-year renewal period, yet failed to make any monthly payments to First Union pursuant to the Lease Renewal during or after the one-year renewal period. (Pl. Comp. ¶¶ 10-11). Additionally, First Union contends that HPP failed to return all of the railroad cars in accordance with the Lease and the Lease Renewal, and failed to make any payments with respect to the railroad cars for recovery, transportation, storage and repair costs, as First Union alleges is required under the terms of the Lease. (Pl. Comp. ¶ 12). In its four count Complaint, First Union

requests damages for: (1) Breach of Contract; (2) Unjust Enrichment (an alternative to Plaintiff's Breach of Contract claim); (3) Replevin; and (4) Conversion.

**DISCUSSION**

HPP believes that dismissal of First Union's Complaint is warranted for four reasons. Defendant contends that dismissal is warranted under Fed. R. Civ. P. 12(b)(1) because it believes that this court lacks subject matter jurisdiction over Plaintiff's cause of action. Second, HPP believes that Plaintiff's Complaint should be dismissed pursuant to Fed. R Civ. P. 12(b)(2), because this Court lacks personal jurisdiction over HPP. Third, Defendant argues that Plaintiff's Complaint should be dismissed under Fed. R. Civ. P. 12(b)(3), for reasons of improper venue. Finally, Defendant urges this Court to dismiss Plaintiff's Complaint pursuant to Fed.R.Civ.P. 12(b)(6), as Plaintiff's Complaint fails to state a claim upon which relief can be granted. Alternatively, if this Court does not dismiss Plaintiff's Complaint for the reasons stated above, HPP contends that this matter should be transferred to the United States District Court, Eastern District of California. The Court will address each ground for dismissal in turn.

**I. Must First Union's Complaint be Dismissed for Lack of Subject Matter Jurisdiction?**

HPP contends that dismissal of First Union's Complaint is warranted under Fed. R. Civ. P. 12(b)(1), because this Court lacks subject matter jurisdiction over Plaintiff's Complaint. Defendant argues that although First Union has alleged that more than $75,000 is in controversy, it cannot establish a good faith expectation of recovery in excess of that amount.

Federal courts are courts of limited jurisdiction. In order for diversity jurisdiction to lie with the federal courts, two requirements must be met: one, there must be complete diversity of citizenship between all plaintiffs and all defendants, and two, "the proper amount in controversy" must be sufficiently alleged. Del Vecchio v. Conseco, Inc., 230 F.3d 974, 977 (7th Cir. 2000). Under the usual circumstance, where the plaintiff's assertion of the amount in controversy is uncontested, the court will accept Plaintiff's good faith allegationS, "unless it 'appear[s] to a legal certainty that the claim is really less than the jurisdictional amount.' " Rexford Rand Corp. v. Ancel, 58 F.3d 1215, 1218 (7th Cir. 1995) (quoting St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 289 (1938)). However, when the defendant challenges the plaintiff's allegations of the amount in controversy, the plaintiff must provide competent proof that it does, in fact, meet the jurisdictional requirement. Rexford Rand, 58 F.3d at 1218 (citing McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189 (1936)). That "competent proof" includes "proof to a reasonable certainty that jurisdiction exists." Gould v. Artisoft, Inc., 1 F.3d 544, 547 (7th Cir. 1993).

First Union contends that HPP owes rent to it for the railroad cars in the amount of at least $325.00 per car, per month, from April 1, 2002, through at least April 30, 2003. HPP alleges that subject matter jurisdiction is lacking in this Court because First Union bases its claims on a contract that HPP believes never existed. Additionally, HPP argues, even if the monthly amount stated was binding, HPP contends that First Union ignores the fact that HPP attempted to return all the cars to First Union when the Riders expired in 2002, and consequently, this refusal to take back the cars does not equate to HPP's liability to pay for the railroad cars during that time. HPP maintains that at most, assuming First Union was entitled to rent for the

four remaining cars, the amount in controversy falls below the jurisdictional minimum required for diversity jurisdiction pursuant to § 1332. In support of its arguments that the amount in controversy exceeds the jurisdictional minimum, First Union provides the numerical calculations of damages recoverable if meritorious in its suit against HPP. First Union contends that in its negotiations with HPP, the Parties agreed to renew the lease for one year, at the rate of $325 per car, per month, for rental of the sixteen railroad cars. See Pl. Ex. B, ¶¶ 7, 11-12. Additionally, Plaintiff contends that as of March 1, 2002, HPP was in possession of the cars, and was utilizing and loading the cars, and that First Union did not receive any compensation for HPP's use of the cars during this time period. Id. at ¶ 13. First Union maintains that the fair value of the cars equals services during the time period that Plaintiff was deprived of use of the cars by HPP, which would exceed $96,000.00, which is calculated by applying charges specified in the Lease Renewal. Id. at ¶ 14. First Union contends that the net damages for breach of the Lease Renewal exceed $132,000.00. Id. at ¶ 15. First Union asserts that the net damages that were incurred comprise the unpaid rent on each of the Cars (at $325 per car per month until returned to First Union consistent with the Lease terms), mechanical damages to repair the damaged Cars, storage charges for each of the Cars (incurred by First Union when HPP did not return the Cars consistent with the Lease terms and instead stored the Cars at First Union's expense), and the freight charges associated with placing each of the Cars in storage. Id. Additionally, First Union notes that this calculation does not include any necessary mechanical charges to repair the Cars returned to First Union by HPP in April 2004. Id. Finally, First Union contends that assuming, *arguendo*, that the Lease Renewal does not apply, the terms of original Lease between the Parties would apply, and consequently, First Union's damages would exceed $214, 000. Id. at ¶ 16.

First Union arrives at this figure because under the Lease, rent at 150% of the rate provided under Riders 4, 5 and 6 is charged until each car is returned in proper condition. Id. According to Plaintiff, as of March 2004, the 150% rate would have been in effect for up to 24 months for certain railroad cars. Id. Additionally, Plaintiff contends, for those cars returned prior to April 2004, repair damages exceeding $21,000.00 have been identified, for which First Union believes HPP is responsible.

First Union has presented sufficient evidence to demonstrate that the amount in controversy readily exceeds the jurisdictional minimum of $75,000. In its arguments that First Union cannot meet the jurisdictional requirement for purposes of diversity jurisdiction, HPP assumes that First Union's claim for breach of contract fails to state a claim upon which relief can be granted, and consequently, First Union's damages cannot exceed the requisite jurisdictional minimum. However, "[t]he inability of the plaintiff to *recover* an amount adequate to give the court jurisdiction does not show his bad faith or oust jurisdiction." St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 289 (1938) (emphasis added). Therefore, even assuming, *arguendo,* that Plaintiff's breach of contract claim fails to state a claim upon which relief can be granted, this Court still has subject matter jurisdiction over Plaintiff's claim, as First Union adequately alleges that the amount in controversy exceeds the jurisdictional minimum of $75,000. Consequently, HPP's motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction is denied.

## II. Can the Court Exercise Personal Jurisdiction Over HPP?

*A. Legal Standard for the Exercise of Personal Jurisdiction*

HPP contends that First Union's Complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(2), as this Court lacks personal jurisdiction over it. "A federal district court exercising diversity jurisdiction has personal jurisdiction 'only if a court of the state in which it sits would have such jurisdiction'." RAR Incorporated v. Turner Diesel Limited, 107 F.3d 1272, 1275 (7th Cir. 1997) (quoting Klump v. Duffus, 71 F.3d 1368, 1371 (7th Cir. 1995) cert denied, 518 U.S. 1004 (1996)). First Union, as the Plaintiff, bears "the burden of establishing a prima facie case for personal jurisdiction." Brown v. Tenet Para American Bicycle Challenge, 931 F.Supp. 592, 593 (N.D. Ill. 1996) (quoting Michael J. Neuman & Associates Limited v. Florabelle Flowers, Incorporated, 15 F.3d 721, 724 (7th Cir. 1994)). However, as the plaintiff, First Union is entitled to have any conflicts in the affidavits resolved in its favor. RAR, 107 F.3d at 1275 (citing Turnock v. Cope, 816 F.2d 332, 333 (7th Cir. 1987)).

There are three obstacles to personal jurisdiction: (1) state statutory law; (2) state constitutional law; and (3) federal constitutional law. RAR, 107 F.3d at 1276. Illinois statutory law, per the Illinois long-arm statute, provides that an Illinois court "may...exercise jurisdiction...on any basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States." Id. (quoting 735 ILCS 5/2-209). Therefore, under the Illinois long-arm statute, an Illinois court has personal jurisdiction as long as the exercise of jurisdiction comports with due process. "The parameters of jurisdiction under the Illinois long-arm statute are contiguous with the requirements of due process under the United States and Illinois Constitutions." Rohde v. Central Railroad of Indiana, 930 F.Supp. 1269, 1271 (N.D. Ill. 1996)

(citing Chemical Waste Management, Inc. v. Sims, 870 F.Supp. 870, 873 (N.D. Ill. 1994); see also Hyatt Int'l Corp. v. CoCo, 302 F.3d 707, 715 (7th Cir. 2002) ("[T]here is no operative difference between the limits imposed by the Illinois Constitution and the federal limitations on personal jurisdiction." (internal citations omitted)). Consequently, if a defendant's contacts with Illinois satisfy the due process clause of the United States Constitution, those contacts will also satisfy the requirements of the Illinois long-arm statute. Rohde, 930 F.Supp. at 1271. To satisfy the requirements of federal due process, the nonresident defendant must have sufficient minimum contacts with the forum state such that the exercise of jurisdiction does not offend "traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). Courts consider whether a defendant could "reasonably anticipate being haled into court" in Illinois. World-Wide Volkswagen Corp. v. Woodsen, 444 U.S. 286, 297 (1990).

*B. Specific and General Jurisdiction*

There are two types of personal jurisdiction this Court can exercise over HPP–specific and general jurisdiction. The Court exercises specific jurisdiction when the suit "arises out of" or is "related to" the defendant's minimum contacts with the forum state. Id. The exercise of personal jurisdiction arising from the defendant's minimum contacts with the forum state must be fair and reasonable under the circumstances. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476-77 (1985). General jurisdiction is present where a defendant has "continuous and systematic" business contacts with the forum state. Interlease Aviation Investors II (Aloha) L.L.C. v. Vanguard Airlines, Inc., 262 F.Supp.2d 898, 906 (N.D. Ill. 2003) (quoting Hyatt, 302 F.3d at 713). First Union contends that this Court has both specific and general jurisdiction over

HPP. Plaintiff's arguments for the exercise of both types of jurisdiction will be addressed in turn.

### 1. Can the Court Properly Exercise Specific Jurisdiction Over HPP?

First Union contends that this Court has specific jurisdiction over HPP for the following reasons. First Union argues that the original Lease entered into by the Parties: (1) was executed by First Union in Illinois; (2) called for all notices required or provided thereunder to be sent to First Union in Illinois; and (3) was to be governed by, and interpreted in accordance with, Illinois law. Additionally, First Union contends that the Lease Renewal agreement was: (1) initially solicited by HPP and Heller in Illinois; (2) accepted by First Union in Illinois after it was sent to Illinois by HPP; (3) negotiated via communications between New York and Illinois; and (4) drafted by First Union in Illinois, and later executed by Heller and returned by him via facsimile to First Union in Rosemont Illinois. Finally, First Union notes that certain railroad cars did traffic through Illinois during the Lease and/or Lease Renewal Term.

HPP contends that First Union has not properly supported its allegation that HPP is subject to personal jurisdiction in the state of Illinois. Further, HPP contends that while the Lease did initially require payments to be made by HPP in Illinois, that provision was later modified to require that payments be sent to North Carolina. Additionally, HPP contends, whether HPP Cars traveled through Illinois while en route from one coast to the other is strictly controlled by the railroad, and out of HPP's control. It is for these reasons that HPP contends that this Court does not have specific jurisdiction over it.

An out of state party's contract with an in state party is not sufficient to establish the requisite minimum contacts for personal jurisdiction. RAR, 107 F.3d at 1277 (citing Burger

-9-

King, 471 U.S. at 478). "Rather, 'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing' must indicate the purposeful availment that makes litigating in the forum state foreseeable to the defendant." RAR, 107 F.3d at 1277 (quoting Burger King, 471 U.S. at 479). Construing all contested evidence in the light most favorable to First Union, this Court determines that First Union has adequately established that HPP is subject to personal jurisdiction in this Court. HPP had significant contacts with the State of Illinois relating to the negotiation of the Parties' Lease and Lease Renewal agreements that make it appropriate for this Court to exercise specific jurisdiction over HPP. While some of the contacts, standing alone, may not have been sufficient for the exercise of personal jurisdiction (i.e., the choice of law provision, standing alone, would not have been an appropriate basis for personal jurisdiction, see e.g., Burger King, 471 U.S. at 482), the aggregation of all of the contacts necessary to execute the Lease and Lease Renewal make it appropriate and constitutional for the Court to exercise specific jurisdiction. HPP's actions within the State of Illinois related to the negotiation and execution of the Parties' agreement make it reasonably foreseeable that the Defendant could be brought before an Illinois court. Therefore, this court has specific jurisdiction over HPP.

### 2. Can This Court Properly Exercise General Jurisdiction Over HPP?

First Union also contends that this Court can assert general jurisdiction over HPP. First Union presents the following evidence in support of the exercise of general jurisdiction over HPP. From January 10, 1998 through August 10, 2002, HPP: (1) contacted entities or persons located in Illinois for business purposes more than 350 times from its main phone and fax line; (2) placed 117 calls to Magid Glove Manufacturing Company in Chicago, for the purchase and

-10-

use of specialized gloves in HPP's business; (3) made 20 calls to Suncast Corporation (an entity that purchased plastics and resins from HPP) located in Batavia, Illinois, and HPP made sales calls to Suncast, both in phone and in person; (4) contacted Pacer International, Inc. ("Pacer"), a freight broker with a subsidiary in Tinley Park; (5) solicited freight brokerage quotes from Pacer during 2000; and (5) contacted the Corporate Group of Lemont, Illinois 67 times.

HPP contends that these contacts cannot establish a basis for general jurisdiction. HPP contends that its contacts with Magid Glove Manufacturing Company were primarily through a sales representative in Clovis, California, and that salesperson instructed HPP to fax its orders to a number that happened to be in Illinois. Additionally, with respect to HPP's contact with freight brokers, HPP contends that it was solicited by Pacer to broker trucking business for point-to-point moves outside of Illinois. HPP contends that the trucking contract negotiated through Pacer did not involve routes that either originated or terminated through Illinois, nor did it involve trucking companies from Illinois. Finally, HPP contends that many of the contacts First Union has attributed to HPP related to H. Heller & Co.'s contacts with the Suncast Corporation, as opposed to HPP's contact with the Suncast Corporation, and that any check issued to HPP by Suncast was mistakenly done so.

Defendant is correct in noting that First Union has imputed some of H. Heller & Co.'s business contacts to HPP, as H. Heller & Co. is not a party to this suit. Therefore, the Court will not consider those contacts in assessing whether HPP is subject to the general jurisdiction of this Court. As stated, this Court must determine whether HPP has continuous and systematic contacts with Illinois. Even excluding those contacts to Suncast actually made by H. Heller & Co., this Court finds that Illinois has general jurisdiction over HPP. Defendants' contacts,

though often by phone, are still sufficiently continuous and systematic to subject it to the general jurisdiction of this Court. Under the Illinois long-arm statute, the physical presence of a defendant in Illinois during the transaction is not necessary. Heritage House Restaurants, Inc. v. Continental Funding Group, Inc., 906 F.2d 276, 281 (7th Cir. 1990) (internal citations omitted). "Where a relationship is naturally based on telephone and mail contacts, these contacts can justify jurisdiction over a defendant." Heritage House, 906 F.2d at 281 (citing McGowen et al. v. Woodsmall Benefit Servs., 554 N.E. 2d 704, 707 (Ill. App. Ct. 1990). Additionally, courts in this Circuit have held that "faxes containing price, quantity and shipping information, as well as representations and assurances, are relevant contacts." Quantum Color Graphics, LLC v. The Fan Association Event Photo GMBH, 185 F.Supp.2d 897, 904 (citing Mid-America Tablewares, Inc. v. Mogi Trading Co., Ltd., 100 F.3d 1353, 1360 (7th Cir. 1996)). Plaintiffs have demonstrated that HPP's contacts with Illinois are sufficient for the exercise of general jurisdiction, and that HPP has purposefully availed itself of this forum. Therefore, Defendant's motion to dismiss pursuant to Fed.R.Civ. P. 12(b)(2) is denied.

### III. Is This Court an Improper Venue for Plaintiff's Complaint?

Under 28 U.S.C. § 1391 (a) ("§1391"), when jurisdiction is founded only on diversity of citizenship, venue is proper only where: (1) any defendant resides, if all defendant reside in the same state; (2) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property subject of the action is situated; or (3) any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no other district in which the action otherwise may be brought. First Union contends that venue is proper in this Court pursuant to §1391(a)(2). HPP alleges that venue is improper because a substantial part of the

events giving rise to this Complaint did not occur in Illinois, but instead occurred in Visalia, California, including the fact that the Railroad Cars are located in California, the remaining Railroad Cars are currently sitting in California, and that other substantial events and omissions giving rise to the Complaint occurred in Visalia, California. Conversely, First Union contends that venue is proper in this Court because HPP solicited First Union in Illinois for the submission of the Lease Renewal, the Lease Renewal was negotiated from Illinois by First Union, and the Lease Renewal was executed and then transmitted by HPP to First Union in Illinois for acceptance. Further, First Union contends that it performed pursuant to the Lease Renewal from Illinois where it agreed to and effected HPP's continued usage of the Railroad Cars. Additionally, notices under the Lease Renewal were to be sent by HPP to First Union in Illinois, and First Union continued to monitor and assure both Parties' compliance under the Lease documents from Illinois.

First Union has established that venue is proper pursuant to § 1391(a)(2), as it has demonstrated that a substantial part of the events giving rise to this Complaint did occur in Illinois. Though Defendants may be correct in noting that the Railroad Cars that are the subject of the Parties' dispute are in California, construing all facts in the light most favorable to the Plaintiff, contractual negotiations and communications were centered in Illinois. The disputed contractual provisions are as important to this suit as the Railroad Cars, and the circumstances surrounding those negotiations are substantial events giving rise to Plaintiff's Complaint. Other courts have found venue to be proper in forum where the agreements that were the subject of the parties' suit were negotiated. See Moore v. AT& T Latin America Corp., 177 F.Supp.2d 785

(N.D. Ill. 2001). Consequently, HPP's motion for improper venue pursuant to 28 U.S.C. § 1391 is denied.

**IV. Should First Union's Complaint be Dismissed Pursuant to Fed. R. Civ. P. 12(b)(6)**

HPP contends that First Union's cause of action should be dismissed because it is based upon a contract that does not exist. In ruling on a motion to dismiss pursuant to Fed.R.Civ. P. 12(b)(6), the Court, "must accept all well pleaded allegations as true. In addition, the Court must view these allegations in the light most favorable to the plaintiff." Gomez v. Illinois State Board of Education, 811 F.2d 1030, 1039 (7th Cir. 1987). A claim will be dismissed only if it is clear that no set of facts in support of the claim would entitle the party to relief. Ledford v. Sullivan, 105 F.3d 354, 356 (7th Cir. 1997) (quoting Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984)).

HPP notes that the Lease Proposal negotiated by the Parties provided that it was subject to the fulfillment of certain terms and conditions, including the Parties' execution of a "mutually agreeable lease documentation." "[P]arties may specifically provide that negotiations are not binding until a formal agreement is in fact executed...If the parties construe the execution of a formal agreement as a condition precedent, then no contract arises unless and until that formal agreement is executed." Quake Construction, Inc. v. American Airlines, Inc., 565 N.E.2d 990, 993 (Ill. 1990) (internal citations omitted). HPP contends that because there was never a mutually agreeable lease assented to by the Parties, no contract was ever formed, because no formal agreement was ever executed. Therefore, HPP argues, First Union fails to state a claim upon which relief can be granted for Count I of its Complaint, which alleges breach of contract.

-14-

Contrary to HPP's arguments, First Union does present sufficient evidence to state a breach of contract claim , thereby surviving HPP's motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6). First Union sufficiently alleges, through its Complaint and all documents attached thereto, that there was in fact a contract between the parties during the relevant time period, and that both Parties assented to the Lease Renewal agreement. Consequently, because First Union has sufficiently alleged that the Lease Renewal Agreement was a valid and enforceable contract between the parties, HPP's motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) is denied.

### V. Should This Case Be Transferred to the Eastern District of California Pursuant to 28 U.S.C. § 1404(a)?

HPP contends that even if this Court does not dismiss First Union's Complaint for the foregoing reasons, this Case should be transferred to the Eastern District of California pursuant to 28 U.S.C. § 1404(a) ("§ 1404(a)") . A court may transfer a civil action pursuant to § 1404(a) "for the convenience of the parties and the witnesses, in the interests of justice." Transfer under § 1404(a) is appropriate when: (1) venue is proper in both the transferor and transferee court; (2) transfer is in the for the convenience of the parties and witnesses; and (3) transfer is in the interests of justice. Barnes v. Rollins Carriage Services, Inc., 976 F.Supp. 767, 768 (N.D. Ill. 1997). Whether transfer is appropriate is left to the sound discretion of the trial court. Bryant v. ITT Corp., 48 F.Supp.2d 829, 832 (N.D. Ill. 1999) (citing Heller Fin., Inc. v. Midwhey Powder Co., 883 F.2d 1286, 1293 (7th Cir. 1989); Coffey v. Van Dorn Iron Works, 796 F.2d 217, 219 (7th Cir. 1986)). HPP, as the moving party has the burden of demonstrating that "the transferee forum is clearly more convenient." Coffey, 796 F.2d at 219-20.

Because this Court has determined that venue is proper in this Court, the central element in dispute is the second element, whether transfer is best for the convenience of the parties and witnesses. When determining whether transfer is convenient for the parties and witnesses, courts consider: (1) the plaintiff's choice of forum, (2) the site of material events; (3) the availability of evidence in each forum; and (4) the convenience of the parties litigating in the respective forums. Barnes, 976 F.Supp. at 768.

Neither party disputes that Illinois is First Union's home forum, and that generally, a party's choice of forum is given substantial deference, particularly if it is also that plaintiff's home forum. Central States, Southeast and Southwest Area Pension Fund v. Salasnek Fisheries, Inc., 977 F.Supp. 888, 890 (N.D. Ill. 1997). Rather, HPP argues that HPP is a California resident, a substantial part of the events occurred in California, and the Railroad Cars are located in California. Additionally, HPP notes that its employees, majority of witnesses and the remaining Railroad Cars are located in Visalia, California. HPP also notes that First Union has designated an agent to accept service of process located in the Eastern District of California and has been authorized by the California Secretary of State to conduct business there since 1996. While the Eastern District of California may be a convenient forum for the parties to litigate this suit, HPP has failed to meet its burden of demonstrating that the Eastern District of California is clearly a more convenient forum than the Northern District of Illinois. As noted earlier by the Court, though it is significant that the Railroad Cars at the center of the Parties' dispute are in Visalia, California, it is also significant that contract negotiations centered in Rosemont, Illinois. Additionally, while many of HPP's key witnesses are located in California, First Union has noted that many of its key witnesses are located in Illinois. Further, First Union correctly notes that

Illinois can be seen as an adequate "central hub" to California and New York (states relevant to HPP) and North Carolina and Illinois (states relevant to First Union) in which to litigate the Parties' disputes. Therefore, because the Defendant, as the moving party, has not demonstrated that the United States District Court, Eastern District of California, is clearly a more convenient forum than this Court, HPP's motion to transfer pursuant to 28 U.S.C. § 1404(a) is denied.

## CONCLUSION

For the foregoing reasons, HPP's motion to dismiss, or in the alternative, transfer venue to the United States District Court of the Eastern District of California, is denied.

Enter:

David H. Coar
United States District Judge

Dated: **July 7, 2004**